And our next case this morning is Brandon Chittum v. Michael Hare. Oh, I'm sorry. Thank you. It's not on the card. Thank you. All right. I guess we're on Zoom for both counsel for this argument. And I see both counsel. Can you both hear me? Yes, Your Honor. Yes, Your Honor. Thank you. Ms. Dotson, you may proceed. Thank you. Good morning. I am Attorney Dotson on behalf of the appellant. May it please the Court. The trial court erred in granting the defendant's motion for summary judgment. The basis of the trial court's decision arose from the rationale that there was no genuine issue of material fact and dispute. Because the record established that Mr. Chittum's recitation of the events was not supported. But the point is that there is no record. The entire case is a classic he say, he say, which in itself makes the matters in dispute. Ms. Dotson, I have a question, please, about the video. There was reliance on the officer's description of the video. But I looked through the district court's docket and didn't see anything suggesting that the video itself was ever admitted into evidence. Did you request that video or was that video ever produced or in evidence? There was no video ever produced. My request for video, you know, I did the normal discovery request in the process of litigating the claim, Your Honor. There was no video produced. Did you raise that with the district court? Yes, yes. The lack of the video? Yes. And their motion for summary judgment, they raised the case of Scott B. Harris, which is precisely an argument that is reasonable in that the court's rationale in Scott B. Harris was that the plaintiff had made a claim of police misconduct. But there was surveillance tape that covered the events that were alleged that clearly were an opposite of the plaintiff's allegations. So that the court's reasonable rationale was, listen, despite the fact that there are, you know, varying accounts between the parties, there's an objective record that shows what actually happened. So we're going to rely on that record. We don't have to just rely on the statements of the parties. But in this case, it is actually an opposite of Scott B. Harris because there is no objective evidence. There's not a video or audio of any of the incidents that have been alleged to transpire between the plaintiff and the defendant. And when you requested the video, does the video no longer exist? Was it not produced? I'll ask Ms. Eckert the same question, but do you know where that evidence is, if it exists? I don't, Your Honor, my understanding in my depositions, as you know, after we did paper discovery, there was depositions. The depositions were that the videos weren't captured or retained after so long. So that by the time these allegations were made and the case was filed, those videos would not have been, you know, saved for the record. So there was no video to produce. If that answers your question, Your Honor. Thank you. Okay. Just so we understand how we got here, is that part of the rationale, Ms. Dodson, because the video didn't exist, it couldn't be produced. But the next best step is to allow the officers to testify what they remember seeing on the video when they watched it previously? Well, if that happened, but that did not really happen. There was no testimony by deposition that they had watched the video and this is what the video produced. There were written reports, though, that reflected that. Well, the written reports were arising from the actual investigation. Right. But there were no... Of defendant, of some of the officers at the facility while conducting the investigation who had reviewed the video and they described what was or wasn't in the video. Well, Your Honor, there were, okay, so let me just, so that you have, you know, a clear understanding. We're not talking about an isolated incident. We're talking about a series of incidents that Mr. Chittum has alleged over the course, that happened over the course of several months. Correct. But my questions are focused because a lot of what the district court relied on is what was supposedly depicted in the video. And I'm trying to understand what evidence was before the district court about that video, whether or not the video itself was, which you've indicated no. No. Not only was the video not itself, but as I stated, there was no statement by deposition of this is what the video, you know, showed. And, you know, there was not... But there were written reports that said that. There were written, no, there were not written reports that identified we reviewed this video on such and such day and this is what it said. No. There were statements that... Where's that evidence coming from then? The district court clearly said that the basis for the decision is both records, paper, and recordings. The recordings we're talking about are the videos, aren't they? But, yeah, I think what the court was referring to was the fact that the officers stated there was nothing in the recordings. Basically, they said, well, you know, when we investigated, we reviewed the recordings and we didn't see what was said. Right. They said they reviewed the video and it didn't show what the plaintiff is saying. Correct. Yeah, and the they there is Captain whatever his name, Earls or Eels or something. Eel. Eels. Right. You know, but the point is the sheriff's department is the employer of the accused. So, if they said six months ago or, you know, six months ago they had video and then they couldn't review it, there were circumstances that they couldn't review because the allegations were made subsequent to when the video would not have been, would not have been retained. So, there was very limited testimony that they reviewed video because it was their direct testimony that at the point that they would have investigated the claim, that video was not at their disposal. They hadn't retained it. So, if they, to an extent, that they reviewed any video, it would have been only partial to the collection of allegations that Mr. Earls had alleged in his complaint in it and in the initial grievance. Because, like I said, they did not have the capacity to retain video over the course of that time. So, what the district court is relying on is their statement, one, that they didn't have video covering this a period of time or, you know, the limited nature of what that video they would have referred, you know, been able to review based on the timing of the allegation versus their investigation of the allegation. There simply was not any objective recording of the various events that Mr. Chittum had alleged in his grievances that would have been, you know, commensurate with the time of their investigation. There was no video for those incidents available. So, what the district court did rely on was the statements of the investigative officers who were really just the employers of the defendant that they had no, they found no evidence to support Mr. Chittum's claims. But, you know, really, normally such an investigation would not have even been conducted by the defendant's employer. It would have been conducted by an outside police force like the Illinois State Police. So, there was no independent objective findings to support Mr. Chittum or to deny Mr. Chittum's claims. It was all in-house handled by the defendant's employer, which, you know, to a certain extent stands in his place in terms of, you know, in terms of just the liability of the claims involved, you know, here before the court. Further, there was no entitlement to immunity on behalf of Mr. Herr because the harassing nature of the conduct that is alleged was not protected activity associated with his employment. The catcalling, the threatening, sexualized remarks could hardly be seen as susceptible conduct of a corrections officer. Even if you could get past the, you know, searching and touching of his genitals. I apologize, Your Honors. I see my time is up. All right. Thank you very much. Ms. Eckert? Yes, thank you. May it please the court. Ms. Dodson, my name is Heidi Eckert, and I represent the defendant in this matter. And I want to focus my argument on the argument raised in Ms. Dodson's brief that the district court based the ruling for summary judgment on supposedly Mr. Chittum not being credible. And that's absolutely not true. The district court reviewed the entire record and found that no reasonable jury could find or appellant. And they also found that his story was contradicted by the record. And I know the brief is in front of the judges, and I don't want to belabor the points that I've already raised. But I think it is most certainly worth going through very quickly a summary of what took place before the initial grievance was filed by appellant. Given the limited time we have, can I ask you to focus on the absence of the recordings from the record? Yes. And the reason I'm asking you that is because the district court did rely upon accounts of what was in and not in the recordings in the summary judgment reasoning. There's no question about it. I'm looking right at the opinion. Okay. But they don't exist. At least according to you, Ms. Dodson, the videos don't exist. They're definitely not in the record. So, Your Honor, yes, they are not in the record because by the time this lawsuit was filed in May of 2018, we were not served. The defendant was not served until August of 2018. And the videos at the jail are only kept for 30 days. However, the videos did exist at the time the grievances were filed by appellant. Okay. With regards to. But it's not a Scott v. Harris situation. Correct, Your Honor. Correct. Okay. And so why doesn't it come down. I'm sorry. To the extent that the videos were not produced in discovery, nor was there ever a discovery dispute raised over the issue of the production of the videotapes. I, in my opinion, the court, the district court was absolutely within their rights to grant summary judgment for defendant based on their viewing of the video, which they then set forth a summary of what they viewed in their memorandums as part of their investigation. But the court never saw the video. How could the district court make a really a credibility determination? And it was a determination that Mr. Chittum's testimony was unreliable and inconsistent, which is Scott v. Harris courts could certainly do if they have the video that shows exactly what happened here. But how could the court make that determination and then disregard Mr. Chittum's testimony based on its conclusion that the testimony was in direct contradiction to a video as described by someone who works for the defendant rather than the court's own viewing of the video? That's what's troubling to me. And Your Honor, it's based on the totality of the record. It wasn't just the court. The court directly relied on that and put strong reliance on it in determining that Mr. Chittum's version was not believable to the point that the court disregarded it. It may be before a jury. It's not believable, but that's not the question before us. And Your Honor, I respectfully disagree. The district court also relied on the admission that appellate made when he apologized for the assault. They relied on the fact that there were no witnesses listed in the initial grievance that could be interviewed. So let's talk about the sexual assault as opposed to the retaliation. Mr. Chittum in his affidavits has set forth various allegations against the defendant of things that he did in the shower, the groping, the inappropriate comments that the apology in the letter doesn't say anything about. The apology deals with what happened in the cell when he took the drugs from there and the assault. So that's a separate question than the sexual harassment allegations. How could the affidavit contradict Mr. Chittum's statements about the sexual harassment? Well, based on the officer's training, you know, these are these are jail officers have been working for 20 years each. So, you know, they have 60 years experience when they did receive the grievance claiming that he had been sexually abused, that inappropriate messages were written in the shower, written in his cell. An investigation was completed and it was determined that there were no witnesses, that the one incident that had occurred most recently, the April 2018 incident in the church, there was videotape of that incident. And it showed that Sergeant Hare most certainly did not have any contact with Appellant, nor did he make any communications with Appellant. Counsel, you can't rely on that videotape because it's not in the record. I think we've covered that. This is not a Scott versus Harris, you know, irrefutable objective video evidence kind of case. And I apologize, Your Honor, I should have been more clear. I'm referring to the memo that was prepared by Captain Eno. Right. The investigation. The investigator's summary of what he saw in the video is not enough for summary judgment in Officer Hare's favor. That is certainly not irrefutable objective evidence that blatantly contradicts the plaintiff's claim here. And that's the Scott versus Harris case. So we're not in that domain right now. We're just in normal summary judgment territory where we've got conflicting evidence about whether this series of harassments occurred. And, Your Honor, you know, taking the video out of the equation, the record still reflects that an investigation was completed. There were no witnesses. The jail officers, you know, spoke with Sergeant Hare. But how in summary judgment could the district court conclude essentially as a matter of law that what the investigation that was done by the defendants is what controls here when it directly contradicts what the plaintiff says? Again, you may ultimately win at trial, but summary judgment the court has to take everything in terms of the plaintiff's evidence in the light most favorable to the plaintiff,  so it's not taking the evidence in the light most favorable to the plaintiff. And, Your Honor, I certainly don't want to speculate, you know, what the district court was thinking when they prepared their order. However, I think it's, I'm sorry, did I interrupt you? I'm sorry. I think it's very clear based on their order that they found that in response to our motion for summary judgment that appellant did not create any material issue of fact. The plaintiff, despite the fact that he is being... I know the district court found that, but I'm, that's what's on appeal. So the question to you is how could the district court find that based on what the plaintiff has said happened? On the sexual harassment claims, not the retaliation, but the sexual harassment. Well, for instance, when he was claiming, appellant was claiming that he was locked down by H.A.R.E. on multiple occasions and was locked down for more than 24 hours. The record establishes... That's the retaliation. That's the retaliation claim. I'm talking about the sexual harassment, what allegedly occurred in the showers and etc. Well, and I'm sorry, Your Honor. During the strip searches when no one else was present, you have one person saying it happened and you have another person saying it did not happen. And as the judges are aware, if in fact, you know, just arguing for the sake of argument that in fact there was some type of physical contact during the strip search, that is allowed under the applicable case law. You know, a jail officer when conducting a strip search, when conducting a cell search, whatever it is, when he or she is searching for contraband, there are instances where there is contact between the jail officer and the detainee. And that is acceptable. Well, that's a trial defense about whether this was within the scope of that policy or whether it exceeded it and became a sexual assault as the plaintiff alleges. I maintain... It is the position of the defendant, Your Honors, that the ruling of the district court was correct, that based on the totality of the record, no reasonable trial or fact could find for appellant. And if I may just quickly go into the retaliation claim, the record is very clear that Chittim, appellant, admitted that he did in fact assault Sergeant Hare. And the record is also clear that Sergeant Hare never locked him down and certainly did not do so for more than 24 hours. I apologize. My time is up, Your Honors. All right. Thank you very much. Thank you. Ms. Dotson, you may have an extra minute in rebuttal because we kept both of you going beyond your time. So if you have something to say briefly in rebuttal, Ms. Dotson, go ahead. Thank you, Your Honor. Just briefly, I'd like to just simply address the issues in regard to the retaliation claim. Mr. Hare has not stated that the retaliation claim or has not alleged in any way that the retaliation claim is based on the charges that were eventually brought against him due to the interaction between he and Mr. Hare in the cell. What he is saying in retaliation, the allegations was that there were certain punitive measures taken against Mr. Hare, withholding of food, the lockdown. Ms. Dotson, here's the question I have for you on the retaliation claim. How does it involve the First Amendment and protected speech as opposed to the Fourth Amendment and the defendant rebuffing or rejecting, you know, unwanted physical contact with himself as he alleges? I don't see the protected speech, in other words, in the retaliation claim as it's presented. And it's, go ahead. No, I'm sorry. I keep anticipating your finish, please. I want to make sure I understand. No, I think you get it. Okay. So my concern, my approach in regard to the First Amendment discussion was that Mr. Hare had filed a grievance and that the grievance was protected speech. He had, you know, it was protected activity and that as a result of the filing of the grievance, he was being retaliated against in terms of punitive measures, withholding of food, lockdowns, other kind of privileges that were being taken away from him. So that was the question. Thank you. All right. Thank you very much. Our thanks to both counsel. The case is taken under advisement.